IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 5:13-CR-35 (MTT) |
| v. | : | |
| | : | |
| | : | Filed at 3:14 PM |
| YOLANDO BLOUNT, | : | 9/4, 2013 |
| aka Yolanda King | : | |
| | : | Deputy Clerk, U.S. District Court |
| | | Middle District of Georgia |

### PLEA AGREEMENT

It is agreed by the United States of America, by and through its undersigned attorney, and **Yolando Blount**, aka Yolanda King, hereinafter referred to as "Defendant," and defendant's undersigned attorney, as follows:

(1)

Defendant acknowledges that defendant has reviewed and discussed the Indictment against defendant in this matter with defendant's attorney and defendant's attorney has explained to defendant her understanding of the government's evidence.

(2)

The defendant understands that defendant is not required to plead guilty, and that defendant has the right to plead not guilty and to elect instead to be tried by jury. The defendant understands that at a jury trial, defendant would enjoy a presumption of innocence, and that the government would have the burden of proving defendant's guilt beyond a reasonable doubt. The defendant understands that defendant would be entitled to the services of a lawyer at all stages of such a trial. The defendant

1



understands that defendant would be entitled to confront and to cross-examine the government's proof, and to present witnesses and evidence in defendant's own behalf. The defendant understands that defendant would have the right to testify in defendant's own behalf, but that defendant could not be compelled to do so. Defendant has discussed these rights with defendant's attorney. Defendant is satisfied with the services of defendant's lawyer. Defendant knowingly and voluntarily waives defendant's right to plead not guilty and to proceed to trial.

The United States Attorney and the Defendant understand and agree that the Court should consider its sentence in light of the advisory Federal Sentencing Guidelines, as explained in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005). Defendant knowingly and voluntarily waives any further objections that Defendant may have based on Booker, Apprendi v. New Jersey, 530 U.S. 466 (2000), and their progeny. So the Defendant agrees that at sentencing the Court may determine any pertinent fact by a preponderance of the evidence and the Court may consider any reliable information, including hearsay. The Defendant expressly waives any claim of right to an indictment, trial by jury, and/or proof beyond a reasonable doubt on any factual determinations that pertain to sentencing in this case.

(3)

Defendant being fully cognizant of defendant's rights, and in exchange for the considerations to be made by the United States as set forth in paragraph (4) below, agrees pursuant to Rule 11(c), Federal Rules of Criminal Procedure, as follows:

2

(A) The defendant will knowingly and voluntarily enter a plea of guilty pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure to **Counts Three, Nine, Fourteen, Eighteen, Twenty-one, Twenty-four, Twenty-seven, and Thirty through Thirty-three of the Indictment, which charges defendant with Wire Fraud in violation of 18 U.S.C. 1343 (Count Three), Mail Fraud in violation of 18 U.S.C. 1341 (Count Thirty-one), Conspiracy in violation of 18 U.S.C. 371 (Count Eighteen), Theft of Public Money in violation of 18 U.S.C. 641(Counts Nine, Twenty-one, and Twenty-four), Aggravated Identity Theft in violation of 18 U.S.C. 1028A (Counts Fourteen, Twenty-seven, Thirty, and Thirty-two), and Access Device Fraud in violation of 18 U.S.C. 1029(a)(3) (Count Thirty-three).**

(B) That defendant fully understands that defendant's plea of guilty as set forth in Subparagraph (A), above, will subject defendant to the following maximum statutory penalties:

**Counts Three and Thirty- one: Twenty (20) years imprisonment, a maximum fine of $250,000, and a term of supervised release of 3 years;**

**Counts Nine, Twenty-one and Twenty-four: Ten (10) years imprisonment, a maximum fine of $250,000 and a term of supervised release of 3 years.**

**Counts Fourteen, Twenty-seven, Thirty and Thirty-two: Mandatory minimum sentence of two (2) years imprisonment, to run consecutive to all other sentences.**

**Count Eighteen: Five (5) years imprisonment, a maximum fine of $250,000, and a term of supervised release of 3 years.**

3

**Count Thirty-three: Ten (10) years imprisonment, a maximum fine of $250,000, and a term of supervised release of 3 years.**

Defendant further acknowledges that the Court is required to impose **a mandatory assessment of $100.00 for each count.**

(C)   The defendant acknowledges and understands that the Court is not bound by any estimate of the advisory sentencing range that defendant may have received from defendant's counsel, the government, or the Probation Office.  The defendant further acknowledges and agrees that defendant will not be allowed to withdraw defendant's plea because defendant has received an estimated guideline range from the government, defendant's counsel, or the Probation Office which is different from the advisory guideline range computed by the Probation Office in the Presentence Report and found by the Court to be the correct advisory guideline range.

(D)   The defendant understands fully and has discussed with defendant's attorney that the Court will not be able to consider or determine an advisory guideline sentencing range until after a pre-sentence investigative report has been completed. The defendant understands and has discussed with defendant's attorney that the defendant will have the opportunity to review the pre-sentence investigative report and challenge any facts reported therein.  The defendant understands and has discussed with defendant's attorney that any objections or challenges by the defendant or defendant's attorney to the Pre-Sentence Report, the Court's evaluation and rulings on that Report, or the Court's sentence, will not be grounds for withdrawal of the plea of guilty.

4

(E) Defendant understands and has discussed with defendant's attorney that after the Court considers the advisory guideline range for this case, the Court will have the discretion to impose a sentence that is more severe or less severe than the advisory guideline range.

(F) Defendant agrees to provide a check for the mandatory assessment at the time of sentencing.

(G) Defendant understands, and has fully discussed with defendant's attorney, that the Court shall order total restitution in this case pursuant to 18 U.S.C. § 3663A and that defendant agrees to pay the restitution ordered by the Court whether to an identifiable victim or the community. Defendant agrees to pay restitution to the Internal Revenue Service in the amount of $493,506.60.

(H) Understanding that Title 18, United States Code, Section 3742, provides for appeal by a defendant of defendant's sentence under certain circumstances, defendant by this agreement waives any right to a direct appeal or other review of defendant's sentence by the District Court or Court of Appeals after conviction.

(I) The defendant understands that ordinarily Title 18, United States Code, Section 3742, will in certain cases allow for a direct appeal after sentencing followed by the Court of Appeals' limited review of a defendant's sentence. But once this agreement is accepted and sentence is imposed by the District Court, defendant by this agreement forever waives any right to an appeal or any other court review of defendant's sentence, and the defendant's waiver includes any collateral attack on the District Court's sentence. However, in the event that the District Court imposes a

5

sentence that exceeds the advisory guideline range as determined by the District Court, then the defendant shall retain the right to pursue a timely appeal of the sentence directly to the Court of Appeals after the District Court imposes its sentence.

The defendant and the United States Attorney agree that nothing in this plea agreement shall affect the government's opportunity to appeal as set forth in Title 18, United States Code, Section 3742(b). If, however, the United States Attorney notices an appeal of the defendant's sentence, then the defendant shall have the right to cross-appeal from the sentence.

(J)   The defendant and the government stipulate and agree that there was no detected or identified biological evidence obtained during the investigation and prosecution of the matter which is subject to DNA testing. The defendant further agrees that all evidence obtained in this investigation and prosecution may be destroyed or returned to its rightful owner.

(K)   Defendant agrees to provide complete, candid, and truthful statements to law enforcement officers regarding defendant's involvement and the involvement of all others involved in the charges alleged in the present **Indictment** as well as any and all criminal violations about which the defendant has knowledge or information and that such information provided will be pursuant to and covered by this agreement. The defendant further agrees to provide complete, candid, and truthful testimony regarding such matters in any proceeding. The defendant understands that this agreement does not require the defendant to implicate any particular individual or individuals or to "make

6



a case," rather it requires the defendant to be truthful and to testify truthfully whenever called upon.

(4)

In exchange for the consideration set forth in Paragraph (3) above, the United States Attorney for the Middle District of Georgia agrees as follows:

(A)   That he will accept the plea of guilty by defendant as provided in Paragraph (3)(A), above, in full satisfaction of all possible federal criminal charges, known to the United States Attorney at the time of defendant's guilty plea, which might have been brought solely in this district against the defendant, and will, at the time of Sentencing move to **dismiss Counts One, Two, Four, Five, Six, Seven, Eight, Ten, Eleven, Twelve, Thirteen, Fifteen, Sixteen, Seventeen, Nineteen, Twenty, Twenty-two, Twenty-three, Twenty-five, Twenty-six, Twenty-eight, and Twenty-nine** of the Indictment currently pending against her. **He further agrees that the Government will not oppose the Defendant's request that the mandatory 2 year consecutive sentences pursuant to 18 U.S.C. 1028A run concurrently with each other.**

(B)   That he further agrees, if the defendant cooperates truthfully and completely with the government, including being debriefed and providing truthful testimony, at any proceeding resulting from or related to defendant's cooperation, to make the extent of the defendant's cooperation known to the sentencing court. If the defendant is not completely truthful and candid in his cooperation with the Government, the defendant may be subject to prosecution for perjury, false statements, obstruction of justice, and/or any other applicable charge. If the cooperation is completed prior to

7



sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" pursuant to Title 18, United States Code, Section 3553(e) and/or Section 5K1.1 of the advisory Sentencing Guidelines warranting a government motion at the time of sentencing recommending a downward departure from the advisory guideline range.  If the cooperation is completed subsequent to sentencing, the Government agrees to consider whether such cooperation qualifies as "substantial assistance" pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure warranting the filing of a motion for reduction of sentence within one year of the imposition of sentence.  In either case, the defendant understands that the determination as to whether defendant has provided "substantial assistance" rests solely with the Government.  Any good faith efforts on the part of the defendant that do not substantially assist in the investigation or prosecution of another person who has committed a crime will not result in either a motion for downward departure from the advisory guideline range or a Rule 35 motion.  In addition, should the defendant fail to cooperate truthfully and completely with the Government, or if the defendant engages in any additional criminal conduct, the defendant shall not be entitled to consideration pursuant to this paragraph.

(C)     Pursuant to Section 1B1.8 of the United States Sentencing Guidelines, the Government agrees that any self-incriminating information which was previously unknown to the Government and is provided to the government by the defendant in connection with defendant's cooperation and as a result of the defendant's plea agreement to cooperate will not be used in determining the advisory guideline range.

Further, the government agrees not to bring additional charges against the defendant, with the exception of charges resulting from or related to violent criminal activity, as defined in Title 18, United States Code, Section 924(e)(2)(B)(i), based on any information provided by the defendant in connection with the defendant's cooperation, which information was not known to the government prior to said cooperation. This does not restrict the government's use of information previously known or independently obtained for such purposes.

(D)   If the defendant affirmatively manifests an acceptance of responsibility as contemplated by the Sentencing Guidelines, the United States Attorney will recommend to the Court that the defendant receive a downward adjustment in the advisory guideline range. But the decision whether the defendant will receive any sentence reduction for acceptance of responsibility rests within the Court's discretion. The United States expressly reserves its right to furnish to the Court information, if any, showing that the defendant has not accepted responsibility, including, but not limited to, denying his involvement, giving conflicting statements as to his involvement, or engaging in additional criminal conduct including personal use of a controlled substance.

(5)

Nothing herein limits the sentencing discretion of the Court.

(6)

This agreement constitutes the entire agreement between the defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Assistant United States



Attorney, concerning any plea to be entered in this case.  In addition, defendant states that no person has, directly or indirectly, threatened or coerced defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

(7)

As an aid to this Court, the United States Attorney and the defendant, by and through defendant's counsel, enter into the following Stipulation of Facts.  This stipulation is entered into in good faith with all parties understanding that the stipulation is not binding on the Court.  Under U.S.S.G. Policy Statement Section 6B1.4(d), this Court may accept this stipulation as written or in its discretion with the aid of the Pre-Sentence Report determine the facts relevant to sentencing.

Subject to the above paragraph, the United States Attorney and the defendant stipulate and agree that the following facts are true and would be proven beyond a reasonable doubt at a trial:

**Stipulation of Facts**:

Beginning in 2011, federal and state law enforcement became involved in an investigation into stolen identity refund fraud in Macon, Georgia. Yolando Blount was named by several individuals as being involved in the fraud scheme.

**Counts 31-32**:

In June, 2012, a Superior Court search warrant was issued for the residence of Defendant, at 2160 New Clinton Road, Macon, Georgia. One of the grounds for the search warrant was a suspected fraudulent U.S. Federal Income Tax Return issued in



the name of C.A.W. The tax return was submitted to the IRS requesting a refund of $1,186.00. A refund in the form of a U.S. Treasury check was issued in the name of C.A.W., but was mailed to Blount's address at 2160 New Clinton Road, Macon, Ga.

According to C.A.W., all of the information on the 2011 tax return was false, and he had not filed the return. He had never lived at 2160 New Clinton Road, which is actually the address of Yolando Blount. The 2011 tax return contained false W-2 forms, false wages, and false withholding amounts. The false tax return claimed a refund in the amount of $1,186.00, based on the false information contained in the tax return. Based on the false information contained in the return, the U.S. Treasury Department issued a Treasury check payable to Calvin A. White on February 29, 2012. The Treasury check was placed in the U.S. Mail, addressed to C.A.W. at 2160 New Clinton Road, Macon, Georgia, the address of Defendant. The check was subsequently endorsed and negotiated in the name of C.A.W., without his knowledge or authority.

During the search warrant of Blount's residence, a backpack was found hidden in the ductwork of her residence. The backpack contained three notebooks, which contained several hundred identities, with names, dates of birth, and social security numbers. Among the identities listed in the notebooks was the name, date of birth, and social security number for C.A.W. Defendant admits that she obtained and used the personal identity information of C.A.W. to prepare and file a false income tax return in the name of C.A.W., without his knowledge or authority.

Also found in the Defendant's residence was a laptop computer, which contained several hundred electronic tax returns in the names of various individuals. Forensic

11



analysis of the computer reveals numerous tax returns prepared using Tax Act software, including the 2011 tax return of C.A.W.

**Count 33**:

Also found in the Defendant's backpack were approximately 65 prepaid debit cards in the names of various individuals. These debit cards had been issued in the names of actual identity theft victims without their knowledge or authority. The debit cards allowed a user to access funds obtained through the use of false tax returns in the names of the actual victims. The false returns would generate refunds which were electronically deposited to the debit card account. Most of these prepaid debit cards had been issued by banks which are located out of state, thereby affecting interstate commerce. Defendant admits that she was in possession of these debit cards in the names of others for the purpose of receiving fraudulent tax refunds.

**Count 18**:

Defendant made a voluntary statement to the agents in which she admitted that she had conspired with others to steal identities for the purpose of filing false tax returns. She also admitted that she had obtained identities from a nursing home, Macon Intermediate Health Care, now known as Medical Management Health & Rehab Center. Defendant stated that she had received the stolen patient identities from an employee, Raquel Hogan.

Raquel Hogan was located and interviewed at the nursing home. Hogan admitted that she had obtained the patient identities from patient files and agreed to provide them to Defendant with knowledge that Defendant intended to use the patient identities to file



false tax returns. According to Hogan, she met Defendant in the parking lot and handed her a handwritten list of patient names, dates of birth, and social security numbers. This handwritten list was found during the search of Defendant's residence. The nursing home administrator has confirmed that Hogan had access to the patients' personal information. The Defendant admits that she did receive the personal identity information of the nursing home residents from Raquel Hogan.

The Internal Revenue Service has confirmed several false tax returns filed in the names of the residents of the nursing home. The nursing home patients have confirmed that the tax returns filed in their names were false. Bank documents show that federal tax refunds were processed in the names of the patients and the refunds were placed on prepaid debit cards. Some of these prepaid debit cards were among those located inside the Defendant's backpack which was found during the search of her residence. All of the stolen patient identities were found in one or more of the notebooks inside the Defendant's backpack.

Numerous withdrawals from the prepaid debit cards show cash withdrawals of up to $700.00 in cash. Several of these withdrawals were made at King's Food Mart. The Defendant has been identified as having made numerous large cash withdrawals on prepaid debit cards at King's Food Mart.

**Counts 21 & 27**:

One of the nursing home residents whose personal identity information was used to file a tax return was D.L. The name and personal identity information of D.L. was included on the list of names given to Defendant by Raquel Hogan. On June 5, 2012, a



tax refund claim was electronically made to the Internal Revenue Service in the name of D.L. in the amount of $1776. On June 10, 2012, the refund was electronically deposited to a prepaid debit card issued by Metabank in the name of D.L. The name and personal identity information of D.L. was included among the names and social security numbers located in the notebooks found in Defendant's backpack. The prepaid debit card in D.L.'s name was also found in Defendant's backpack. D.L. confirms that she did not file a tax return for the 2011 tax year, and that the return filed in her name by Defendant was false. Defendant admits that she used the personal identity information to prepare and file a false tax return in the name of D.L., and that she received the proceeds of the tax refund by accessing the prepaid debit card.

**Counts 24 & 30:**

L.E.E. is a resident of another nursing home facility in Macon, Georgia. On June 5, 2012, a tax refund claim was electronically made to the Internal Revenue Service in the name of L.E.E. in the amount of $1776. On June 13, 2012, the refund was electronically deposited to a prepaid debit card issued by Bancorp Bank in the name of L.E.E. The name and personal identity information of L.E.E. was included among the names and social security numbers located in the notebooks found in Defendant's backpack. The prepaid debit card in L.E.E.'s name was also found in Defendant's backpack. L.E.E. did not earn any income in 2011 and did not file a tax return for the 2011 tax year; the return filed in her name by Defendant was false. Defendant admits that she used the personal identity information to prepare and file a false tax return in

the name of L.E.E., and that she received the proceeds of the tax refund by accessing the prepaid debit card.

**Counts 3, 9, & 14**:

In May, 2010, Defendant opened a bank account at Capital City Bank, using her own name and social security number. From May, 2010, to August, 2010, Defendant received a series of fraudulent tax refunds which were direct deposited into the Capital City account by interstate wire transfers. The individuals named in the tax returns have verified that they had not filed the returns and were victims of identity theft. According to the victims, the information on the returns was false. Many of these victims were prisoners and inmates who had not filed tax returns in several years. Two of these identities were located in the notebooks found in Defendant's backpack.

Among the fraudulent returns filed in 2010 was a return filed in the name of J.M.C. On July 22, 2010, a 2009 tax return was electronically filed in J.M.C.'s name, and listed the address of 2160 New Clinton Road, Macon, Georgia, which is actually the address of the Defendant. The return listed wages of $9884 and claimed a refund in the amount of $1042. On July 29, 2010, a refund of $1034 was electronically transmitted by interstate wire transfer and deposited into the Capital City Bank account of Defendant. In actual fact, J.M.C. did not earn wages in 2009; he did not file a tax return, and he did not live at 2160 New Clinton Road, or anywhere in Macon, Georgia. J.M.C. was in prison during all of 2009 and 2010. He was not aware that an income tax return had been filed in his name, and he did not authorize Defendant to file a return, claim a refund, or to receive any funds. Defendant admits that she used the name and social



security number of J.M.C. to prepare and file a false tax return, and that she received the proceeds of the refund, which were deposited into her bank account at Capital City Bank.

For purposes of determining relevant conduct and intended loss under USSG Section 1B1.3, the Government and the Defendant stipulate that the Defendant's laptop computer contains tax returns which claim false refunds in addition to those enumerated in the Indictment. The tax returns found on Defendant's laptop computer represent refund claims filed against the Government in the amount of $511,951.00. From the refund claims submitted by returns on Defendant's computer, the Internal Revenue Service actually paid out $460,692.00 in false claims, which represents the actual loss amount to the United States Government. The total amount of actual loss to the Government, including the nursing home patient refunds and the Capital City Bank refunds, is $493,506.60. The total amount of fraudulent refund claims is $550,150.60.

(8)

## ACCEPTANCE OF PLEA AGREEMENT

Defendant understands and has fully discussed with defendant's attorney that this agreement shall become effective only upon the Court's acceptance of this agreement and the Court's acceptance of the plea of guilty by the defendant.

SO AGREED, this 4th day of Sept., 2013.

MICHAEL J. MOORE
UNITED STATES ATTORNEY

BY: _____

GRAHAM A. THORPE
GEORGIA BAR NO. 710650
ASSISTANT UNITED STATES ATTORNEY
MIDDLE DISTRICT OF GEORGIA
P.O. BOX 1702
MACON, GA 31202
TEL. (478) 621-2700
FAX. (478) 621-2655

I, **Yolando Blount**, have read this agreement and had this agreement read to me by my attorney, C. Alan Wheeler. I have discussed this agreement with my attorney and I fully understand it and agree to its terms.

*Yolando Blount* (signature)
Yolando Blount
DEFENDANT

I, C. Alan Wheeler, attorney for defendant **Yolando Blount**, have explained the information and the government's evidence received through discovery and my investigation of the charge to defendant. I believe defendant understands the charge against defendant and the evidence that would be presented against defendant at a trial. I have read this agreement, have been given a copy of it for my file, and have explained it to defendant. To the best of my knowledge and belief, defendant understands this agreement.

*C. Alan Wheeler* (signature)
C. Alan Wheeler
ATTORNEY FOR DEFENDANT